# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**UNITED STATES OF AMERICA**

v.            Case No. 8:15-CR-420-T-30TBM

**LUIS ALBERTO ECHEVERRIA-ROMERO**
_____/

## DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW, the Defendant, LUIS ALBERTO ECHEVERRIA-ROMERO, by and through undersigned counsel, and files this sentencing memorandum in support of a sentence below the advisory guideline. Mr. Echeverria-Romero moves this Court for the imposition of a reasonable sentence which is no greater than necessary to comply with the purposes of sentencing enumerated in 18 U.S.C. § 3553(a)(2). As grounds in support of this motion, Mr. Echeverria-Romero states the following:

**I.    MR. ECHEVERRIA-ROMERO'S BACKGROUND[1]**

Mr. Echeverria-Romero is a 54 year old fisherman, born and raised in Esmeralda, Ecuador. Mr. Echeverria-Romero grew up in extremely impoverished home, that lacked water, electricity and plumbing. He is one of 7

---

[1] Background information is taken from the Presentence Report ("PSR") and interviews with Mr. Echeverria-Romero.

children born to Ulvio Echeverria Bermudez Flores and Rosa Bonilla Romero. Mr. Echeverria-Romero lost his mother when he was only three (3) years old, and was raised by an older sister and then an aunt. Mr. Echeverria-Romero began working at a farm at an early age, so that he could help his family financially. As a result, he was unable to complete his education, and is unable to read or write Spanish. Mr. Echeverria-Romero worked hard, and felt great pride in the honest, yet meager earnings he earned. At 18, Mr. Echeverria-Romero enlisted in the Army as a foot soldier – it was during this time that his father passed away, and he still feels great regret for not attending the funeral.

Mr. Echeverria-Romero eventually began a family of his own, and has been married to his common-law wife for 28 years; they have six children together. Mr. Echeverria-Romero is a loving and supportive husband and father, and the separation from his family is the worst punishment he could have ever imagined.

Mr. Echeverria-Romero is in good health; he drinks occasionally, but has never used illegal drugs. Other than his depression from being away from his family, he does not suffer from any mental or emotional conditions.

## II.     PROCEDURAL HISTORY AND GUIDELINE CALCULATIONS

On October 1, 2015, the grand jury in the Middle District of Florida returned a two count indictment, charging Mr. Echeverria-Romero, and three other co-

defendants with Conspiracy to Possess with the Intent to Distribute 5 kilograms or more of Cocaine, in violation of 46 U.S.C. §§ 70503 (a) and 70506(a) and 21 U.S.C. § 960 (b)(1)(B)(ii).

On December 15, 2015, Mr. Echeverria-Romero pled guilty to Count 1, pursuant to a plea agreement, and the Court accepted his plea of guilty and adjudication of guilt on January 4, 2016.

The probation officer correctly calculated Mr. Echeverria-Romero's advisory guideline range. PSR ¶¶20-29. With an offense level of 33, and a criminal history category I, Mr. Echeverria-Romero's guideline imprisonment range is **11 years, 3 months – 14 years.**.

### III. MINOR ROLE

Mr. Echeverria-Romero should receive a two-level reduction for minor role. Mr. Echeverria-Romero's role in this case was simply as a courier of the cocaine. He was not a leader or organizer, and had no proprietary interest in the operation – he was paid only to transport the cocaine.

The seminal Eleventh Circuit case dealing with the determination of a mitigating role reduction pursuant to U.S.S.G. §3B1.2 is *United States v. Rodriguez De Varon*, 175 F.3d 930 (11th Cir. 1999). In the *De Varon* case, the Eleventh Circuit established a two-part test for determining whether a defendant

qualifies for a minor role reduction. *De Varon*, 175 F.3d at 934. As the Eleventh Circuit noted, "[f]irst, and foremost, the district court must measure the defendant's role against [his] relevant conduct, that is, the conduct for which [he] has been held accountable under U.S.S.G. §1B1.3." *Id*. The Eleventh Circuit further stated the second part of the test requires that "where the record evidence is sufficient, the district court may also measure the defendant's conduct against that of other participants in the criminal scheme attributed to the defendant." *Id*.

The guideline involved in the issue of minor role is U.S.S.G. §3B1.2; the new amendment to it is a more inclusive guideline provision for individuals like Mr. Echeverria-Romero. The pertinent changes appear not in the text of §3B1.2 itself, but rather in the commentary of Application Note 3(C), which instructs sentencing courts to apply a fact-based determination in deciding whether the mitigating adjustment should be -4 levels (a "minimal" role), -2 levels (a "minor" role), or -3 levels (roles falling between minor and minimal). Specifically, the Commission has added text setting forth a non-exclusive list of factors to examine, including: the defendant's understanding of the scope and structure of the crime; the degree of the defendant's participation in planning or organizing the crime; the extent to which the defendant exercised or influenced decision-making authority; the nature and extent of the defendant's participation in the offense itself; and the

degree to which the defendant stood to benefit from the unlawful activity. Significantly, Application Note 3(C) advises sentencing courts that merely because "a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in this criminal activity." This language was added in specific response to cases that concluded a defendant's indispensable role was incompatible with a mitigating role adjustment. *See*, e.g., *United States v. Skinner*, 690 F.3d 772, 873-84 (6th Cir. 2012) (holding that a "defendant who plays a lesser role in a criminal scheme may nonetheless fail to qualify as a minor participant if his role was indispensable or critical to the success of the scheme").

The purpose of the mitigating role adjustment is to ensure that a low-level participant in a conspiracy does not receive the same sentence as a high-level participant in a conspiracy. Otherwise, based on the fact that all of the defendants in a conspiracy are held accountable for the total quantity of drugs involved, non-similarly situated defendants would be receiving the same sentence despite the minor role that some of the defendants may have had. Since, Mr. Echeverria-Romero is being held for an amount of cocaine that places him at the same offense level as the owners, and those charged with logistics, his role must be

compared to all of the other participants of the group of individuals.

In the present case, the factors weigh in favor of Mr. Echeverria-Romero's minor role status. Factually, Mr. Echeverria-Romero was paid by others in the conspiracy. Mr. Echeverria-Romero had no equity interest in the drugs. He had no role in planning the criminal scheme and absolutely no role in the ultimate distribution of the cocaine. Other factors supporting Mr. Echeverria-Romero's minor role status include the fact that he did not recruit any other participants, he had little knowledge of the scope of the broader conspiracy, he reported to a larger player in the conspiracy. Distinctly, no one reported to him. Clearly under these facts, Mr. Echeverria-Romero was less culpable than most of the participants. Specifically, he was less culpable than the loaders, the logistics people, the distributors, the purchaser of the cocaine, the seller of the cocaine or any other unindicted co-conspirators. He was essentially a mule on a boat.

Based on the forgoing argument and legal authority, Mr. Echeverria-Romero's objections should be granted and he should receive a two-level reduction for minor role. Such a result will be consistent with one of the main goals of the guidelines by insuring that (absent the mandatory ten year sentence ) he does not receive the same sentence as individuals that are more culpable than him, thus running astray of the guiding goal that similarly-situated

defendants should be punished similarly.

## IV. REQUEST FOR A REASONABLE SENTENCE

Mr. Echeverria-Romero respectfully requests that this Court impose a sentence below the advisory guideline range, as "sufficient but not greater than necessary" to accomplish the purposes of sentencing. The Sentencing Guidelines are now, of course, advisory. *United States v. Booker*, 543 U.S. 220 (2005). Thus, although the recommended guideline range must be taken into account, this Court must follow the "parsimony provision" of 18 U.S.C. § 3553(a), which is the "overarching" command of the statute. *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558, 570 (2007). That provision provides that this Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of [§ 3553(a)]." Those purposes set forth in paragraph 2, are: "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

**A. The Nature and Circumstances of the Offense and the History and Characteristics of Mr. Echeverria-Romero[18 U.S.C. § 3553(a)(1)]**

The history and characteristics of Mr. Echeverria-Romero, as well as the facts and circumstances of this case would justify a departure/variance. Mr. Echeverria-Romero is a 54 year old man, who always led an honest and hard-working life. He was vulnerable because of his lack of education and lack of financial means. Like many others in his country, he was struggling to make ends meet. His involvement in criminal conduct began after his boat motor was stolen, and he was desperate to purchase a new motor so that he could continue fishing, and support his family. While fishing one day, "cocaine pirates"[2] boarded his boat, and stole his engine. He was left out to sea for days until another boat came along and rescued him. In this instance, when Mr. Echeverria-Romero was offered the job, he knew that it involved transporting cocaine, and he was offered $2,500 for his assistance. Against his better judgment, Mr. Echeverria-Romero took the job – not in greed, but because of his desire to repair his boat, and help his family live a better life.

---

[2] Cocaine pirates are on large ships that stop other boats on high seas asking for fish. They approach on that pretext and then they come on board – if they stop you before dawn, it is because they are drug traffickers. The pirates hang the Ecuadorean flag to conceal their presence; some steal motors, while others use the fisherman to conceal themselves from authorities. *See* www.insightcrime.org/new-analysis/ecuadors-cocaine-pirates-part-i

**B.     To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense [18 U.S.C. §3553(a)(2)(A)]**

Mr. Echeverria-Romero has accepted responsibility for his actions, and acknowledged that his behavior was wrong. He related that he did not truly understand the consequences of his actions until he arrived in the United States, sat in jail, and had an opportunity to reflect on his actions. Mr. Echeverria-Romero is already thinking about ways he can make a better life for himself and his family. He is committed to using the time he is incarcerated to learn to further his education. He would also like to learn a trade that could help improve his chances of employment once he is returned to his country. Prisons are good for punishing, and Mr. Echeverria-Romero understands the need for punishment; however, he is a first time offender, is not violent and will eventually be returned to his country. For Mr. Echeverria-Romero, the punitive purpose of sentencing can be achieved with a below-range sentence. With a sentence to the minimum of ten (10) years, Mr. Echeverria-Romero will be in his 60's when he is released.

## **CONCLUSION**

After consideration of the factors enumerated in 18 U.S.C. § 3553(a), this Court should find that a sentence below the advisory guideline range is "sufficient but not greater than necessary to achieve the purposes of sentencing." Mr.

Echeverria-Romero requests that a sentence at the statutory minimum is more than reasonable in this case.

DATED this 16th day of March, 2016.

Respectfully submitted,

DONNA LEE LEM
FEDERAL DEFENDER

*/s/ Yvette C. Gray*
Yvette C. Gray
Bar No. 016516 (Arizona)
Assistant Federal Defender
400 N. Tampa Street, Suite 2700
Tampa, Florida 33602
Phone: (813)228-2715
Fax: (813)228-2562
Email: Yvette_Gray@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of March, 2016, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of the electronic filing to the following:

James C. Preston, Jr., AUSA

*/s/ Yvette C. Gray*
Yvette C. Gray
Assistant Federal Defender